# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP2782-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Appellant-Cross-Respondent, |
| | v. |
| | Andre M. Chamblis, |
| | Defendant-Respondent-Cross-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
(Reported at 354 Wis. 2d 622, 848 N.W.2d 903)
(Ct. App. 2014 – Unpublished)

| | |
|---|---|
| OPINION FILED: | June 12, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 3, 2015 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | La Crosse |
| JUDGE: | Elliott M. Levine |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ZIEGLER, J. concurs. (Opinion Filed.) |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-respondent-cross-appellant-petitioner, there were briefs by *Steven W. Zaleski* and *Zaleski Law Firm*, Madison, and oral argument by *Steven W. Zaleski*.

For the plaintiff-appellant-cross-respondent, the cause was argued by *Michael C. Sanders*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP2782-CR
(L.C. No. 2011CF644)

STATE OF WISCONSIN    :    IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Appellant-Cross-Respondent,**

  **v.**

**Andre M. Chamblis,**

    **Defendant-Respondent-Cross-Appellant-Petitioner.**

**FILED**

**JUN 12, 2015**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 N. PATRICK CROOKS, J. Andre Chamblis (Chamblis) pleaded guilty to operating with a prohibited alcohol concentration (PAC) as a sixth offense in violation of Wis. Stat. § 346.63(1)(b) (2011-12).[1] Prior to accepting the plea, the circuit court[2] informed Chamblis that the offense constituted

---

[1] All references to the Wisconsin Statutes are to the 2011-12 version unless otherwise indicated.

[2] La Crosse County, the Honorable Elliott M. Levine, presiding.

a Class H felony which carried a minimum penalty of 6 months imprisonment and a $600 fine and a maximum penalty of 6 years imprisonment (three years confinement and three years extended supervision) and a $10,000 fine. Wis. Stat. §§ 346.65(2)(am)5., 939.50(3)(h)., 973.01(2)(b)8. The circuit court ultimately sentenced Chamblis to four years imprisonment comprised of two years confinement and two years extended supervision.

¶2 The State appealed the judgment of conviction. It argued that the circuit court erred by excluding additional evidence the State sought to submit to prove that Chamblis possessed a sixth prior drunk-driving related conviction. Had the circuit court admitted the evidence and found it sufficient to establish the alleged prior conviction, Chamblis would have faced the decision to plead guilty to the charge of operating with a PAC as a seventh offense. That offense constituted a Class G felony and would have subjected Chamblis to an increased range of punishment. Wis. Stat. § 346.65(2)(am)6. Specifically, the minimum penalty for a seventh offense was a term of imprisonment that included three years confinement and a period of extended supervision. Id. The maximum penalty was 10 years imprisonment (five years confinement and five years extended supervision) and a $25,000 fine. Wis. Stat. §§ 973.01(2)(b)7., 939.50(3)g.

¶3 The court of appeals agreed that the circuit court erred in excluding the additional evidence. It further determined that the evidence was sufficient to prove the alleged prior conviction. As a result, the court of appeals reversed

2

the judgment of conviction and remanded the case to the circuit court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh offense.[3]

¶4 This case presents two issues for our review. The first is whether the circuit court erred in excluding the additional evidence the State sought to submit to enhance Chamblis's punishment on the basis that the State offered the evidence "too late." The second is whether the court of appeals' remedy violates Chamblis's right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary.

¶5 We assume, without deciding, that the circuit court erred in excluding the additional evidence the State sought to submit to enhance Chamblis's punishment.

¶6 Although we assume error, we hold that the court of appeals' decision remanding the case to the circuit court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh offense violates Chamblis's right to due process. Chamblis entered a knowing, intelligent, and voluntary guilty plea to operating with a PAC as a sixth offense, not as a seventh offense. Because a seventh offense carries a greater range of punishment than does a sixth offense, the court of

---

[3] State v. Chamblis, No. 2012AP2782-CR, unpublished order (Wis. Ct. App. May 29, 2014).

appeals' remedy renders Chamblis's plea unknowing, unintelligent, and involuntary.  We further conclude that a remedy which requires Chamblis to withdraw his guilty plea is fundamentally unfair and thus violative of due process under the facts of this case.

¶7  Accordingly, we reverse the decision of the court of appeals and uphold Chamblis's conviction.

I. FACTS AND PROCEDURAL HISTORY

¶8  On November 22, 2011, Chamblis was arrested on suspicion of operating a vehicle while under the influence of an intoxicant (OWI) in La Crosse.  The criminal complaint, dated November 30, 2011, charged Chamblis with the following: (1) OWI as a fifth or sixth offense and as a repeater contrary to Wis. Stat. § 346.63(1)(a); (2) operating with a PAC as a fifth or sixth offense and as a repeater contrary to Wis. Stat. § 346.63(1)(b); and (3) obstructing an officer as a repeater contrary to Wis. Stat. § 946.41(1).[4]  The criminal complaint alleged that Chamblis possessed five prior drunk-driving related

---

[4] On April 10, 2012, Chamblis was also charged with battery by prisoner contrary to Wis. Stat. § 940.20(1).  The State filed that charge in a separate action in La Crosse County.

4

convictions from Minnesota for the purpose of penalty enhancement under Wis. Stat. § 346.65(2)(am).[5]

¶9 In January 2012, the circuit court granted the State's motion to amend the information[6] to charge Chamblis with OWI as a seventh, eighth, or ninth offense and as a repeater, and operating with a PAC as a seventh, eighth, or ninth offense and as a repeater. The State claimed that Chamblis had two prior drunk-driving related convictions from Illinois in addition to the five from Minnesota and submitted documentation to that effect.

¶10 On August 6, 2012, Chamblis filed a motion challenging the purported Illinois convictions on two grounds that are relevant here. First, he argued that the two alleged convictions should be counted as one conviction because they stemmed from the same incident. Second, he contended that the

---

[5] Under Wis. Stat. § 346.65(2)(am), repeated violations of drunk-driving related offenses are subject to increasingly severe penalties. "This graduated penalty structure is nothing more than a penalty enhancer similar to a repeater statute which does not in any way alter the nature of the substantive offense, i.e., the prohibited conduct, but rather goes only to the question of punishment." State v. McAllister, 107 Wis. 2d 532, 535, 319 N.W.2d 865 (1982). The penalty range for operating with a PAC as a fifth or sixth offense is less severe than the penalty range for a seventh offense. See Wis. Stat. § 346.65(2)(am)5.-6.

[6] "The information is the accusatory pleading under our criminal system to which the defendant must plead and stand trial . . . ." Pillsbury v. State, 31 Wis. 2d 87, 93, 142 N.W.2d 187 (1966).

State had offered insufficient documentation to prove the purported convictions.

¶11 The circuit court held a hearing on Chamblis's motion on September 12, 2012. The circuit court agreed that the two alleged Illinois convictions should be treated as one conviction. However, it determined that the State's proffered evidence of the purported conviction——an Illinois driver's abstract——was insufficient to establish that Chamblis had been convicted of a drunk-driving related offense in Illinois. In rendering its decision, the circuit court recognized that "we are not at sentencing" and "there could be further proof that comes up." It informed the prosecutor that if "more evidence is supplied . . . we will review it at that point in time . . . ."

¶12 At the final pretrial hearing on September 14, 2012, the parties informed the circuit court that Chamblis wished to enter a guilty plea. Neither the parties nor the circuit court raised the issue of the disputed Illinois conviction. Because the State intended to request a presentence investigation report, the circuit court did not schedule a sentencing hearing to go along with the plea date.

¶13 Chamblis's plea hearing took place on September 19, 2012. The parties advised the circuit court that Chamblis planned to enter a guilty plea to operating with a PAC as a fourth offense "or greater" without a repeater.[7] Chamblis was

---

[7] As part of the plea agreement, the State agreed to dismiss the charges of OWI as a repeater, obstructing an officer as a repeater, and battery by prisoner (from the related case).

willing to admit to the five prior convictions from Minnesota but continued to dispute the alleged conviction from Illinois. Accordingly, a question remained whether Chamblis would face the penalty range for operating with a PAC as a sixth offense or as a seventh offense upon conviction.

¶14 Recognizing the uncertainty regarding Chamblis's potential punishment, defense counsel stated on the record the minimum and maximum penalties for both offenses. Defense counsel then expressed his confusion with handling the plea in such a manner. This prompted the circuit court to inquire into the status of the alleged Illinois conviction. The prosecutor explained that he had obtained additional information from Illinois and that he planned to submit an offer of proof prior to sentencing. Defense counsel objected to the State offering the new evidence at that point in the proceedings.

¶15 The circuit court determined that the State was attempting to offer the additional evidence "too late." It reasoned that Chamblis could not enter a knowing, intelligent, and voluntary guilty plea without understanding the precise minimum and maximum penalties associated with the plea. Determining that it was unfair to put off the plea date, the circuit court declared that discovery was "done." It noted that the case had "been set for trial a long time"; that the issue concerning proof of the purported Illinois conviction "was

7

flagged a long time ago"[8]; and that the issue prevented the parties from resolving the case "in a way that would have made more sense months ago . . . ." As a result of its decision, the circuit court indicated that it would accept a plea only to the lower charge of operating with a PAC as a sixth offense.

¶16 The State chose to go through with the plea agreement anyway. The circuit court then personally addressed Chamblis to ensure that he understood the nature of the charge and the implications of the plea. It began by asking whether Chamblis understood the plea agreement "at this point in time," to which Chamblis responded "I do now, sir." The circuit court proceeded to explain the minimum and maximum penalties commensurate with a conviction for operating with a PAC as a sixth offense. Upon accepting the plea, the circuit court sentenced Chamblis to four years imprisonment comprised of two years confinement and two years extended supervision.

¶17 The State appealed the judgment of conviction. The court of appeals determined that the circuit court erred in excluding the State's additional evidence for two reasons. First, this court's decisions in State v. McAllister, 107 Wis. 2d 532, 539, 319 N.W.2d 865 (1982), and State v. Wideman, 206 Wis. 2d 91, 104-05, 556 N.W.2d 737 (1996), provide a general rule that prior drunk-driving related convictions must be proved

---

[8] Although Chamblis did not file his motion challenging the sufficiency of the evidence of the purported Illinois conviction until August 6, 2012, the transcript from the plea hearing indicates that defense counsel raised the issue with the State months earlier.

8

before sentencing. Second, the circuit court "explicitly invited" the State to bring forth additional evidence of the alleged Illinois conviction prior to sentencing. The court of appeals further concluded that the additional evidence sufficiently established that Chamblis had been convicted of a drunk-driving related offense in Illinois.

¶18 Consequently, the court of appeals reversed the judgment of conviction and remanded the case to the circuit court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh offense. In fashioning its remedy, the court of appeals rejected Chamblis's contention that such relief would violate his constitutional right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary.[9] The court of appeals reasoned that Chamblis was "aware both of the 'specific penalty' he faced if convicted of operating with a PAC as a seventh offense, and that he faced this possible punishment if the State succeeded in proving the purported Illinois conviction."

¶19 We granted Chamblis's petition for review.

## II. STANDARD OF REVIEW

¶20 We are asked to decide whether the circuit court erred in excluding the additional evidence the State sought to submit

---

[9] The court of appeals also dismissed Chamblis's second argument that the remedy violated his constitutional right to be free from double jeopardy, reasoning that it was underdeveloped. We did not accept Chamblis's petition for review on that issue.

at Chamblis's plea hearing.   We review that decision under the erroneous exercise of discretion standard.   Martindale v. Ripp, 2001 WI 113, ¶28, 246 Wis. 2d 67, 629 N.W.2d 698.   "In making evidentiary rulings, the circuit court has broad discretion." Id.   "As with other discretionary determinations, this court will uphold a decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion."   Id.

¶21  We are also asked to determine whether the court of appeals' remedy in this case violates Chamblis's right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary.   This presents a question of constitutional fact.   State v. Bollig, 2000 WI 6, ¶13, 232 Wis. 2d 561, 605 N.W.2d 199.   "We will not upset the circuit court's findings of historical or evidentiary facts unless they are clearly erroneous."   Id.   "We review constitutional issues independently of the determinations rendered by the circuit court and the court of appeals."   Id.

### III. DISCUSSION

¶22  Both issues in this case require us to examine the legal principles fundamental to guilty pleas.   Accordingly, we begin by discussing the constitutional standard that a guilty plea be affirmatively shown to be knowing, intelligent, and voluntary.   We then proceed to consider whether the circuit court erred in excluding the additional evidence the State sought to submit to enhance Chamblis's punishment.   We assume

10

without deciding that the decision was error. We next address whether the court of appeals' remedy violates Chamblis's right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary, concluding that it does. Finally, we explain why a remedy which requires Chamblis to withdraw his guilty plea is fundamentally unfair and thus violative of due process under the facts of this case.

## A. Analytical Framework

¶23 Since "[s]everal federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial," Boykin v. Alabama, 395 U.S. 238, 243 (1969), fundamental due process requires that a plea be knowing, intelligent, and voluntary. State v. Cross, 2010 WI 70, ¶16, 326 Wis. 2d 492, 786 N.W.2d 64. A defendant contemplating a guilty plea must possess "sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970). Relevant circumstances include the nature of both the charge to which the defendant is pleading and the constitutional rights he or she is waiving. State v. Van Camp, 213 Wis. 2d 131, 139-40, 569 N.W.2d 577 (1997). In this case, however, we are concerned with the constitutional requirement that defendants understand the "'direct consequences' of their pleas." Bollig, 232 Wis. 2d 561, ¶16 (quoting Brady, 397 U.S. at 755).

¶24 "A direct consequence represents one that has a definite, immediate, and largely automatic effect on the range of defendant's punishment." Id. "Matters concerning the nature

11

of the sentence that could be imposed are most likely to be viewed as direct consequences." 5 Wayne R. LaFave, Criminal Procedure § 21.4(d), 817 (3d ed. 2007). Accordingly, the general practice is to advise defendants of the minimum and maximum penalties associated with a plea. Id.; see also State v. Erickson, 53 Wis. 2d 474, 479-80, 192 N.W.2d 872 (1972) (discussing the importance of informing the defendant of the maximum penalty possible upon entry of a plea); State v. Mohr, 201 Wis. 2d 693, 700, 549 N.W.2d 497 (Ct. App. 1996) (holding that circuit courts must advise defendants of the presumptive minimum sentence associated with a plea).

¶25 A defendant's failure to understand the precise maximum punishment is not necessarily a due process violation. Cross, 326 Wis. 2d 492, ¶37 (holding that there is no due process violation where the sentence communicated to the defendant is higher, but not substantially higher, than that authorized by law). However, "when the defendant is told the sentence is lower than the amount allowed by law, a defendant's due process rights are at greater risk . . . ." Id., ¶39. Indeed, this court has previously recognized that "[c]oncepts of fundamental fairness require that a defendant not receive a greater sentence of imprisonment than that which he was told he could receive on pleading guilty." Garski v. State, 75 Wis. 2d 62, 76, 248 N.W.2d 425 (1977); accord Hart v. Marion Corr. Inst., 927 F.2d 256, 259 (6th Cir. 1991) (holding that the defendant's due process rights were violated when he was given a

12

sentence higher than that which he believed to be the maximum when he pleaded guilty).

¶26 To ensure that a guilty plea is knowing, intelligent, and voluntary, Wis. Stat. § 971.08, State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and subsequent cases impose certain procedural duties on circuit courts. State v. Brown, 2006 WI 100, ¶23, 293 Wis. 2d 594, 716 N.W.2d 906. In Brown, we reiterated that one of those duties is to notify the defendant of the direct consequences of his or her plea. Id., ¶35. Relatedly, we explained that circuit courts must "[e]stablish the defendant's understanding of the . . . range of punishments to which he is subjecting himself by entering a plea . . . ." Id. (citing Bangert, 132 Wis. 2d at 262; Wis. Stat. § 971.08(1)(a)). However, a circuit court's failure to comply with the above duties is not a per se due process violation, as it is possible that the defendant may learn of the implications of his or her plea from another source. See Bangert, 131 Wis. 2d at 272-76. That is why we consider the totality of the circumstances in determining the knowing, intelligent, and voluntary nature of a plea. Id. at 258.

¶27 The bottom line is that a plea made in ignorance of its direct consequences is not knowing, intelligent, and voluntary. In such situations, the plea "has been obtained in violation of due process and is therefore void." McCarthy v. United States, 394 U.S. 459, 466 (1969).

B. Error

13

¶28 We now turn to consider whether the circuit court erred in excluding the additional evidence the State sought to submit to prove that Chamblis possessed a sixth prior drunk-driving related conviction for the purpose of increasing his punishment. As noted, the circuit court determined that the additional evidence was untimely. Its reasoning was two-fold: (1) Chamblis could not enter a knowing, intelligent, and voluntary guilty plea without understanding the precise minimum and maximum penalties associated with the plea; and (2) it was unfair to put off the plea date given the State's action in delaying the proceedings by failing to obtain the evidence sooner.

¶29 The parties focus their arguments on whether the circuit court mistakenly believed it needed to determine the number of prior convictions that would count toward sentencing before accepting Chamblis's guilty plea.

¶30 Chamblis argues that in the context of a guilty plea a circuit court must determine the number of prior convictions that will count toward sentencing before accepting the plea. According to Chamblis, this is to ensure that a defendant understands the direct consequences of his or her plea. To support his position, Chamblis notes that under Wis. Stat. § 346.65(2)(am), the number of prior convictions influences the severity of a defendant's punishment for operating with a PAC.

¶31 The State contends that it has until sentencing to prove the prior convictions, citing to our decisions in McAllister and Wideman for support. It also argues that the

14

statutory scheme governing the penalties for operating with a PAC requires that a circuit court determine the number of prior convictions at the time of sentencing, once a defendant has pleaded guilty or no contest or been found guilty at trial. Where a defendant wishes to enter a guilty plea and disputes the number of prior convictions, the State maintains that a circuit court could simply advise the defendant of the different ranges of punishment that he or she might face depending on how the issue is resolved. For example, in this case, the circuit court could have informed Chamblis of the range of penalties for operating with a PAC as a sixth offense and as a seventh offense.

¶32 The circuit court correctly recognized that there are situations in which a determination of prior convictions for sentence enhancement should be made before accepting a guilty plea in order to ensure the knowing, intelligent, and voluntary nature of the plea. In a case like this one, where the defendant disputes the number of prior convictions and the issue affects the range of punishment he faces upon conviction, the better practice is to determine the number of prior convictions before accepting the plea. This assures that a defendant understands the direct consequences of his or her plea.

¶33 Our decisions in McAllister and Wideman do not compel a different conclusion. In McAllister, we held that prior violations of Wis. Stat. § 346.63(1) are not "elements of the crime of driving or operating a motor vehicle while under the influence of an intoxicant or a controlled substance, thereby

15

requiring that the question of their existence be submitted to the jury." McAllister, 107 Wis. 2d at 532-33. In Wideman, we concluded that the requirements for establishing prior offenses set forth in Wis. Stat. § 973.12(1), the general repeat offender statute, are not applicable to establishing prior offenses under Wis. Stat. § 346.65(2), the OWI/PAC penalty enhancement statute. Wideman, 206 Wis. 2d at 94-95. In both cases, we made general statements supporting the proposition that the State may prove prior drunk-driving related convictions for sentence enhancement "before sentencing" or "at sentencing." See McAllister, 107 Wis. 2d at 539; Wideman, 206 Wis. 2d at 108. However, in both McAllister and Wideman, the defendant was convicted after a trial in which the State did not need to prove the prior drunk-driving related convictions to meet the elements of the substantive charge. McAllister, 107 Wis. 2d at 532-33. Thus, McAllister and Wideman are inapposite, as neither case dealt with the constitutional considerations that are at stake where a defendant wishes to enter a guilty plea and disputes the number of prior convictions that will count toward enhancing his or her punishment.

¶34 The statutory scheme governing the penalties for operating with a PAC does not undermine our determination either. The State argues that the plain language of Wis. Stat. §§ 343.307(1)[10] and 346.65(2)(am)6[11] provides that the time for

_____

[10] Wisconsin Stat. § 343.307(1), entitled "Prior convictions, suspensions, or revocations to be counted as offenses," provides:

16

(1) The court shall count the following to determine the length of a revocation under s. 343.30(1q)(b) and to determine the penalty under ss. 114.09(2) and 346.65(2):

(a) Convictions for violations under s. 346.63(1), or a local ordinance in conformity with that section.

(b) Convictions for violations of a law of a federally recognized American Indian tribe or band in this state in conformity with s. 346.63(1).

(c) Convictions for violations under s. 346.63(2) or 940.25, or s. 940.09 where the offense involved the use of a vehicle.

(d) Convictions under the law of another jurisdiction that prohibits a person from refusing chemical testing or using a motor vehicle while intoxicated or under the influence of a controlled substance or controlled substance analog, or a combination thereof; with an excess or specified range of alcohol concentration; while under the influence of any drug to a degree that renders the person incapable of safely driving; or while having a detectable amount of a restricted controlled substance in his or her blood, as those or substantially similar terms are used in that jurisdiction's laws.

(e) Operating privilege suspensions or revocations under the law of another jurisdiction arising out of a refusal to submit to chemical testing.

(f) Revocations under s. 343.305(10).

(g) Convictions for violations under s. 114.09(1)(b)1. or 1m.

[11] Wisconsin Stat. § 346.65(2)(am)6 provides that "any person violating s. 346.63(1) . . . is guilty of a Class G felony if the number of convictions under ss. 940.09(1) and 940.25 in the person's lifetime, plus the total number of suspensions, revocations, and other convictions counted under s. 343.307(1), equals 7, 8, or 9 . . . ."

17

counting the number of prior convictions for sentence enhancement is at sentencing, once there has been a conviction for the underlying offense. Under the State's interpretation, there will be instances in which a defendant enters a guilty plea without understanding the direct consequences of that decision. Specifically, the State reasons, "[i]n a case in which the court does not impose sentence immediately after accepting the plea, the court cannot definitely tell the defendant how many convictions will be counted because, the court cannot know how many convictions the defendant will have at the time of sentencing."

¶35 We see nothing in the plain language of Wis. Stat. §§ 343.307(1) and 346.65(2)(am)6 that prevents a circuit court from determining the number of prior convictions that will count toward sentencing prior to accepting a plea in order to ensure the knowing, intelligent, and voluntary nature of the plea. We further note that the State's interpretation raises constitutional concerns that we wish to avoid. See Am. Family Mut. Ins. Co. v. Wisconsin Dep't of Revenue, 222 Wis. 2d 650, 667, 586 N.W.2d 872 (1998) ("A cardinal rule of statutory interpretation is that the legislature intended to adopt a

18

constitutional statute and that a court should preserve a law and hold it constitutional when possible.").[12]

¶36 We acknowledge the State's contention that in a case like this one, a circuit court could ensure that a defendant understands the direct consequences of his or her plea by informing the defendant of the different ranges of punishment that are possible depending on how many prior convictions the State later establishes. While that approach may be constitutionally permissible in a particular case, we note that the penalty ranges could vary dramatically depending on the number of prior convictions the defendant disputes. See Wis. Stat. § 346.65(2)(am)1.-7. For that reason, the better practice in this type of situation is to determine the number of prior convictions that will count toward sentencing prior to accepting the plea.

¶37 Although we conclude that the circuit court correctly recognized the need to determine the number of prior convictions before accepting Chamblis's guilty plea, the question remains whether the circuit court reasonably excluded the State's additional evidence of the purported Illinois conviction after explicitly welcoming the evidence a week earlier.

---

[12] In apparent recognition of the constitutional problems created by its statutory construction, the State suggests that "any problem that result[s] from counting convictions after entry of a guilty plea could be easily remedied by a motion to withdraw the plea." But as discussed in section C(ii) below, a defendant may not wish to withdraw his or her guilty plea, and requiring the defendant to do so raises its own constitutional concerns.

¶38 At the motion hearing on September 12, 2012, the circuit court made several statements indicating that it would consider additional evidence of the alleged Illinois conviction if the State came up with anything. Two days later, at the final pre-trial hearing, the parties informed the circuit court that Chamblis wished to enter a guilty plea. Notwithstanding the circuit court's inclination to determine the number of prior convictions that would count toward sentencing before accepting the plea, there was no discussion of the status of the purported Illinois conviction. Under these circumstances, we can see why the prosecutor thought he had time to submit the additional evidence.

¶39 That said, our review of the plea hearing transcript indicates that the circuit court was extremely frustrated with the manner in which the State prosecuted this case. As we explained at the outset of this opinion, the issue of the alleged Illinois conviction appeared to delay the resolution of this matter. Given the situation presented, we understand the circuit court's desire to move the case forward and accept Chamblis's guilty plea at the September 19 hearing. Thus, we assume, without deciding, that the circuit court erred in excluding the State's additional evidence of the purported Illinois conviction.

## C. Remedy

### i. The court of appeals' remedy

¶40 Assuming error, we proceed to consider whether the court of appeals' remedy in this case——a remand to the circuit

court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh offense——violates Chamblis's right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary.

¶41 Chamblis argues that the court of appeals' remedy invalidates his guilty plea. He maintains that he entered a guilty plea to the charge of operating with a PAC as a sixth offense with an understanding that, as a direct consequence of his decision, he faced a maximum penalty of 6 years imprisonment and a $10,000 fine. He notes that the maximum penalty commensurate with a conviction for operating with a PAC as a seventh offense is more punitive: 10 years imprisonment and a $25,000 fine. Thus, according to Chamblis, the court of appeals' remedy renders his guilty plea unknowing, unintelligent, and involuntary, thereby violating his right to due process by subjecting him to a greater sentence of imprisonment than that which he was told he could receive upon pleading guilty. He further contends that it would be fundamentally unfair to resentence him because he has already served the confinement portion of his originally imposed sentence.

¶42 The State argues that the court of appeals' remedy does not invalidate Chamblis's guilty plea. According to the State, the court of appeals correctly determined that Chamblis understood that he could be sentenced for a seventh offense upon pleading guilty. The State further submits that it would not be

21

fundamentally unfair to resentence Chamblis consistent with a seventh offense because he knew the State would be appealing the circuit court's evidentiary ruling. Thus, the State maintains that Chamblis cannot reasonably claim an expectation of finality in his sentence.

¶43 We agree with Chamblis that the court of appeals' remedy in this case violates his right to due process by rendering his guilty plea unknowing, unintelligent, and involuntary.

¶44 The record clearly establishes that Chamblis entered a knowing, intelligent, and voluntary guilty plea to the charge of operating with a PAC as a sixth offense, not as a seventh offense. Initially, there was confusion regarding the direct consequences of Chamblis's plea: it was unclear whether Chamblis was pleading guilty to a sixth offense——a Class H felony carrying a maximum punishment of 6 years imprisonment and a $10,000 fine——or a seventh offense——a Class G felony carrying a maximum punishment of 10 years imprisonment and a $25,000 fine. However, the circuit court dispelled all confusion once it engaged Chamblis in the plea colloquy mandated by Wis. Stat. § 971.08.

¶45 At the outset of the plea colloquy, the circuit court clarified that it was proceeding with a plea to the charge of operating with a PAC as a sixth offense. It then asked Chamblis whether he understood the plea agreement. Chamblis responded "I do now, sir." The circuit court informed Chamblis that the plea carried a minimum penalty of 6 months imprisonment and a $600

22

fine and a maximum penalty of 6 years imprisonment and a $10,000 fine. Chamblis stated that he understood the penalty range and pleaded guilty.

¶46 Later in the plea colloquy, the circuit court ensured that Chamblis's plea was knowing, intelligent, and voluntary to the charge of operating with a PAC as a sixth offense:

> THE COURT: Is there anything about your case that you don't understand at this point?
>
> THE DEFENDANT: I didn't [understand] at first, but now, no, sir.
>
> THE COURT: Okay. You feel like you fully understand everything?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And it's been sort of a complicated matter. Do you feel you have a clear understanding of what these issues are?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Do you understand the Court's not bound by any sentencing recommendation or any other plea agreement or any arguments made by any of the attorneys at the time of sentencing? Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And in fact, upon your plea of guilty, the court may impose a maximum penalty in spite of any agreement?
>
> THE DEFENDANT: Yes, sir.

Of course, the maximum penalty to which the circuit court referred and Chamblis understood was that associated with a sixth offense: 6 years imprisonment and a $10,000 fine. The plea colloquy therefore demonstrates that Chamblis entered a

23

knowing, intelligent, and voluntary guilty plea to operating with a PAC as a sixth offense, not as a seventh offense.

¶47 However, as noted, we are not confined to the plea colloquy in evaluating Chamblis's due process challenge. Rather, we consider the totality of the circumstances in determining the knowing, intelligent, and voluntary nature of his plea. Bangert, 131 Wis. 2d at 258. That means we consider other portions of the record to determine if Chamblis understood that, as a direct consequence of his plea, he could be sentenced for a seventh offense.

¶48 The court of appeals found significance in the fact that defense counsel had stated on the record the minimum and maximum penalties associated with a conviction for operating with a PAC as a seventh offense. But these statements occurred prior to the circuit court's explicit determination that it would accept a plea only to the lower charge of a sixth offense. In fact, as we indicated above, the record clearly establishes that Chamblis did not understand the direct consequences of his plea at the time in which these statements were made. That is precisely why we require the circuit court to personally engage the defendant in ascertaining the knowing, intelligent, and voluntary nature of a plea. See Brown, 293 Wis. 2d 594, ¶¶50-52. Given that the circuit court later informed Chamblis that the minimum and maximum penalties he faced were those commensurate with a sixth offense, it cannot reasonably be argued that defense counsel's statements

24

demonstrate that Chamblis's plea was knowing, intelligent, and voluntary to a seventh offense.

¶49 The court of appeals also found it important that the "Plea Questionnaire/Waiver of Rights" form indicated a maximum punishment consistent with a seventh offense: 10 years imprisonment and a $25,000 fine. However, similar to defense counsel's statements, the "Plea Questionnaire/Waiver of Rights" form is of marginal value to the present issue. Chamblis executed the form a day before his plea hearing amid the uncertainty regarding the direct consequences of his plea.[13] We further note that the form did not list the minimum penalty corresponding to a seventh offense. This deficiency exemplifies why a plea questionnaire is not a substitute for the circuit court personally addressing the defendant to ensure that he or she understands the implications the plea. See id., ¶52. Put simply, the "Plea Questionnaire/Waiver of Rights" form, executed prior to the plea colloquy in this case, does not establish that Chamblis's plea was knowing, intelligent, and voluntary to a seventh offense.

¶50 Considering the totality of the circumstances, we conclude that Chamblis entered into a plea agreement with an understanding that the minimum penalty he could face was 6 months imprisonment and a $600 fine and the maximum penalty he could face was 6 years imprisonment and a $10,000 fine. That

---

[13] The "Plea Questionnaire/Waiver of Rights" form is dated September 18, 2012. Chamblis's plea hearing took place on September 19, 2012.

means Chamblis entered a knowing, intelligent, and voluntary guilty plea to operating with a PAC as a sixth offense, not as a seventh offense. Thus, the court of appeals' remedy which subjects Chamblis to a greater sentence of imprisonment than that which he was told he could receive upon pleading guilty violates his right to due process.

## ii. The State's proposed remedy

¶51 In its brief and at oral argument, the State argued that even if the court of appeals' remedy violates Chamblis's right to due process, the proper remedy is to allow Chamblis to withdraw his guilty plea. Drawing on Bangert, 131 Wis. 2d at 283, the State maintains that plea withdrawal is the exclusive remedy for a defendant's plea being unknowing, unintelligent, and involuntary. While that may be true where a defendant appeals his or her conviction seeking plea withdrawal, that is hardly the situation we have here.

¶52 In Bangert, we set forth a burden-shifting procedure for circuit courts to follow when faced with a defendant's motion to withdraw his or her guilty or no contest plea on the basis that it was not knowing, intelligent, and voluntary. See Bangert, 131 Wis. 2d at 274-76. That procedure is not implicated in the instant action because Chamblis neither filed a motion to withdraw his guilty plea nor appealed his conviction. Indeed, defense counsel made clear at oral argument that Chamblis does not wish to withdraw his guilty plea.

¶53 The State suggests that Chamblis should be required to withdraw his plea anyway. According to the State, Chamblis is

26

not entitled to conviction and sentence for a sixth offense because the evidence shows that he already possessed six prior drunk-driving related convictions when he entered his guilty plea in this case.[14] Colloquially speaking, the State argues that Chamblis should not get a "free pass" on the circuit court's purported mistake.

¶54 We find it fundamentally unfair and thus violative of due process to require Chamblis to withdraw his guilty plea in this case.[15] "[T]he concern of due process is fundamental fairness." State ex rel. Lyons v. De Valk, 47 Wis. 2d 200, 205, 177 N.W.2d 106 (1970). "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" Gilbert v. Homar, 520 U.S. 924, 930 (1997) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

¶55 Here, we can think of at least a couple reasons that requiring Chamblis to withdraw his guilty plea is fundamentally unfair. First and foremost, forced plea withdrawal deprives Chamblis of the benefit of his bargain. "A criminal defendant has a constitutional right to the enforcement of a negotiated plea agreement." State v. Smith, 207 Wis. 2d 258, 271, 558

---

[14] Chamblis did not appeal the portion of the court of appeals' decision that concluded the State had sufficiently proved the prior Illinois conviction.

[15] In response to a question at oral argument, defense counsel maintained that Chamblis could not be required to withdraw his guilty plea without violating his constitutional right to be free from double jeopardy. We choose not to address that argument because it was not briefed by the parties.

27

N.W.2d 379 (1997). "'Although a defendant has no right to call upon the prosecution to perform while the agreement is wholly executory, once the defendant has given up his bargaining chip by pleading guilty, due process requires that the defendant's expectations be fulfilled.'" Id. (citation omitted).

¶56 A substantial number of plea bargains are "no doubt motivated at least in part by the hope or assurance of a lesser penalty than might be imposed if there were a guilty verdict after a trial to judge or jury." Brady, 397 U.S. at 752. This case is no different. Chamblis entered into the plea agreement with the hope that he would face a less severe penalty than if he went to trial. As noted, the State agreed to dismiss charges of OWI as a repeater, obstructing an officer as a repeater, and battery by prisoner in exchange for Chamblis's plea and voluntary waiver of constitutional rights. Thus, a forced plea withdrawal in this case subjects Chamblis to greater punishment, not just with respect to the charge of operating with a PAC, but to these additional charges as well. That is fundamentally unfair, particularly in light of the fact that Chamblis has already served the 2 year confinement portion of his originally imposed sentence and therefore has an expectation of finality in that sentence.

¶57 Second, we note that the State was not without options to avoid this dilemma. For example, the State could have withdrawn its plea offer in response to the circuit court's determination that it would accept a plea only to the lower charge. In fact, the circuit court went out of its way to give

the prosecutor and defense counsel an opportunity to discuss whether the State wished to proceed with the plea given the evidentiary ruling. The State then could have sought review of the circuit court's decision by filing a petition for leave to appeal a non-final order pursuant to Wis. Stat. § 808.03(2).[16] However, the State chose to go through with the plea agreement anyway, despite the constitutional implications, perhaps because it too benefits from such a bargain. Id. ("For the State there are also advantages—the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof.").

---

[16] Wisconsin Stat. § 808.03(2) provides:

Appeals by permission. A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:

(a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;

(b) Protect the petitioner from substantial or irreparable injury; or

(c) Clarify an issue of general importance in the administration of justice.

¶58 For these reasons, we reject the State's contention that plea withdrawal is an appropriate remedy in this case.

IV. CONCLUSION

¶59 We assume, without deciding, that the circuit court erred in excluding the additional evidence the State sought to submit to enhance Chamblis's punishment.

¶60 Although we assume error, we hold that the court of appeals' decision remanding the case to the circuit court with instructions to enter an amended judgment of conviction for operating with a PAC as a seventh offense and impose sentence for a seventh offense violates Chamblis's right to due process. Chamblis entered a knowing, intelligent, and voluntary guilty plea to operating with a PAC as a sixth offense, not as a seventh offense. Because a seventh offense carries a greater range of punishment than does a sixth offense, the court of appeals' remedy renders Chamblis's plea unknowing, unintelligent, and involuntary. We further conclude that a remedy which requires Chamblis to withdraw his guilty plea is fundamentally unfair and thus violative of due process under the facts of this case.

¶61 Accordingly, we reverse the decision of the court of appeals and uphold Chamblis's conviction.

*By the Court.*—The decision of the court of appeals is reversed.

¶62 ANNETTE KINGSLAND ZIEGLER, J. *(concurring)*. Although I join the majority opinion, I depart from the majority analysis because I would not assume without deciding that the circuit court erred by excluding the State's proffered evidence of two Illinois convictions. Instead, I would conclude that the circuit court did not err because it did not erroneously exercise its discretion.[1] A circuit court's decision to admit or exclude evidence is "'entitled to great deference.'" State v. Jackson, 2014 WI 4, ¶45, 352 Wis. 2d 249, 841 N.W.2d 791 (quoting State v. Head, 2002 WI 99, ¶43, 255 Wis. 2d 194, 648 N.W.2d 413). "'This court will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion.'" Id., ¶43 (quoting Weborg v. Jenny, 2012 WI 67, ¶41, 341 Wis. 2d 668, 816 N.W.2d 191).

---

[1] It is unclear why the majority opinion does not explicitly hold that the circuit court did not erroneously exercise its discretion. The court of appeals in the present case held "that the circuit court erroneously exercised its discretion when, at the September 19 plea hearing, it excluded the additional evidence of the purported Illinois conviction as 'too late.'" State v. Chamblis, No. 2012AP2782-CR, unpublished order, ¶21 (Wis. Ct. App. May 29, 2014). The court of appeals reasoned that the circuit court erred because, under State v. Wideman, 206 Wis. 2d 91, 556 N.W.2d 737 (1996), and State v. McAllister, 107 Wis. 2d 532, 319 N.W.2d 865 (1982), the State was not required to prove the number of Chamblis's prior convictions until the sentencing hearing. Id. The majority opinion rejects that view of Wideman and McAllister. Majority op., ¶¶31-33. Thus, the majority opinion seems to implicitly conclude that the circuit court did not err.

1

¶63 At the plea hearing, the circuit court denied the State's request to submit additional evidence of Illinois convictions at a later hearing, deeming this request "too late." The State made that request seven days after the circuit court held that the State's original evidence was insufficient, six weeks after Chamblis filed a motion challenging the State's evidence, and six months after the State learned that Chamblis was going to challenge its evidence. Ultimately, the circuit court reasoned that "this case has been set for trial a long time," the State "had plenty of time" to prove the number of Chamblis's prior convictions, and the court did not wish to delay the case any longer. Under the facts of this case, the circuit court's decision to exclude the proffered evidence was well within its discretion. A contrary conclusion not only raises concern regarding fairness and the ability of a defendant to knowingly, intelligently, and voluntarily plead but also, it neuters the court's ability to control the docket and calendar. In the case at issue the court correctly determined that the time had come for the parties to know the scope of the charges and the potential penalties. While a court is endowed with the ability to allow amendment of charges under appropriate circumstances, a circuit court should likewise have the discretion to say enough is enough, as the court did here.

## I. PROCEDURAL HISTORY

¶64 A discussion of the procedural history of this case demonstrates why the circuit court appropriately exercised its discretion when it excluded the State's after-the-fact, "last

2

second," proffer of evidence. On November 22, 2011, Chamblis was arrested, he appeared at a bond hearing, and $5,000 cash bail was set. Unable to post bail, he remained in custody throughout this case. Eight days later, on November 30, the State filed a complaint and Chamblis made his initial appearance. The complaint charged Chamblis with operating while intoxicated ("OWI") (fifth or sixth offense) and operating with a prohibited alcohol concentration ("PAC") (fifth or sixth offense). The complaint alleged that he had five prior drunk driving convictions from Minnesota. On December 7, 2011, a preliminary examination was held and Chamblis was bound over for trial. At the end of the preliminary hearing, the State filed an information and Chamblis pled not guilty. The information contained the same charges as the complaint. Two days later, on December 9, Chamblis filed a demand for a speedy trial.[2]

¶65 On December 12, 2011, the court scheduled jury selection for February 27, 2012. Sometime in mid- to late-December, the court scheduled a jury trial for March 2, 2012.[3] On December 27 the State sent an e-mail to the circuit court, requesting that the trial date be moved ahead one day to March 1. The State made this request because its analyst witness was unavailable to testify on March 2. On January 4,

_____

[2] Chamblis withdrew this demand on May 25, 2012.

[3] The record does not indicate precisely when the court scheduled the trial for March 2, 2012. The only reference that the record makes to a trial date of March 2 is an e-mail from the State to the circuit court, dated December 27, 2011, in which the State requested moving the trial date from March 2 to March 1.

2012, the court granted the State's request and rescheduled the jury trial for March 1.

¶66 On January 12, 2012, the State filed an amended information, which charged Chamblis with OWI (seventh, eighth, or ninth offense) and operating with a PAC (seventh, eighth, or ninth offense). The amended information alleged the same five prior convictions from Minnesota that were alleged in the complaint and original information and an additional two prior convictions from Illinois.

¶67 On January 23, 2012, the circuit court moved the trial date to March 8, 2012, because the State's analyst witness was unavailable on the date for which the trial had been scheduled.

¶68 On January 30, 2012, Chamblis's attorney withdrew from representation. On February 9 the State Public Defender's Office assigned replacement counsel. On February 14 the circuit court entered an order appointing the new counsel.

¶69 Sometime shortly after being appointed, Chamblis's new attorney informed the State that Chamblis intended to challenge the alleged Illinois convictions.[4]

¶70 On February 15, 2012, the circuit court held a hearing that was scheduled to be a final pre-trial hearing. Chamblis's

---

[4] As Chamblis's new attorney explained several months later at the plea hearing on September 19, 2012, "I've been complaining about [the sufficiency of the State's evidence of Illinois convictions] for the last, over six months. [The District Attorney's Office and I] have had numerous e-mails going back and forth." The circuit court found Chamblis's attorney credible, stating that "[t]he issue was flagged a long time ago to the Court and I'm sure it was flagged, I trust [Chamblis's counsel] is saying that he told the District Attorney's office about this six months ago."

4

new attorney did not appear because he was unaware of this hearing, as he was appointed counsel the previous day. In a letter to the court dated February 15, Chamblis's attorney stated that he has "not had a chance to review the file, let alone decide whether to proceed to trial." He requested that the court remove the case from the trial calendar and schedule the case for a status conference. On February 17 the court granted that request.

¶71 At a March 20 status conference, the circuit court rescheduled jury selection for June 11, and the jury trial for June 15, 2012.

¶72 On May 25, 2012, the circuit court held another final pre-trial hearing. Chamblis's attorney informed the circuit court that he had another trial scheduled for the same day as the trial in this case. Accordingly, the court rescheduled jury selection for September 24 and a jury trial for September 26, 2012.

¶73 On August 6, 2012, Chamblis filed a motion challenging the Illinois convictions alleged in the amended information. The State's deadline for filing a brief in response to the motion was August 22. However, the State did not file a brief until September 5, two weeks late.

¶74 Two weeks before trial, on Wednesday, September 12, 2012, the circuit court held a hearing on Chamblis's motion challenging the alleged Illinois convictions. The court determined that the State's evidence did not prove that Chamblis was convicted in Illinois of a drunk driving-related offense.

5

The court stated that "if . . . more evidence is supplied, . . . we will review it at that point in time . . . ."

¶75 Two days later, on September 14, the circuit court held a final pre-trial hearing. This hearing was very brief, and no one mentioned the status of the alleged Illinois convictions. Chamblis's attorney informed the court that Chamblis would like to plead guilty. He further informed the court that a sentencing hearing should be held on a later date than the plea hearing because the State would be requesting a presentence investigation.

¶76 On Wednesday, September 19, 2012, the circuit court held a plea hearing. Chamblis's attorney stated that, pursuant to a plea agreement, Chamblis would plead guilty to operating with a PAC as a fourth offense or greater. At that time, the pending charges were still those alleged in the January 2012 amended information, namely OWI (seventh, eighth, or ninth offense) and operating with a PAC (seventh, eighth, or ninth offense). The State explained that it wished to make an offer of proof regarding the alleged Illinois convictions at the sentencing hearing, which would be held at a later date. An Illinois conviction would have made Chamblis's PAC offense in the present case a seventh, rather than sixth, offense.

¶77 The mandatory minimum and maximum penalties for Chamblis's offense varied greatly depending on whether it was a sixth or seventh offense. A person who is convicted of a fifth or sixth OWI or PAC offense "shall be fined not less than $600 and imprisoned for not less than 6 months." Wis. Stat.

6

§ 346.65(2)(am)5. The maximum penalty for that offense is "a fine not to exceed $10,000 or imprisonment not to exceed 6 years, or both." Wis. Stat. § 939.50(3)(h); see also § 346.65(2)(am)5. By contrast, a person who is convicted of a seventh, eighth, or ninth OWI or PAC offense "shall [receive] a bifurcated sentence . . . and the confinement portion of the bifurcated sentence . . . shall be not less than 3 years." Wis. Stat. § 346.65(2)(am)6. (2013-14); see also State v. Williams, 2014 WI 64, ¶47, 355 Wis. 2d 581, 852 N.W.2d 467. The maximum penalty for that offense is "a fine not to exceed $25,000 or imprisonment not to exceed 10 years, or both." § 939.50(3)(g); see also § 346.65(2)(am)6. Thus, if the State proved that Chamblis had an Illinois conviction, his mandatory minimum penalty would increase from six months of imprisonment to three years of confinement. Similarly, his maximum penalty would increase from six years of imprisonment to ten years of imprisonment. Chamblis did not plead to charges that carried the higher penalties.

¶78 At the plea hearing, the court stated that it was "not going to consider the new evidence" because that evidence was being offered "way too late." As Chamblis' attorney explained, "I've been complaining about [the sufficiency of the State's evidence of Illinois convictions] for the last, over six months. [The District Attorney's Office and I] have had numerous e-mails going back and forth." The circuit court found Chamblis's attorney credible, stating that "[t]he issue was flagged a long time ago to the Court and I'm sure it was flagged, I trust

7

[Chamblis's counsel] is saying that he told the District Attorney's office about this six months ago." The court explained how "frustrating" it was that the case had not been resolved already. The court noted that "this case has been set for trial a long time." The court explained that the dispute over the alleged Illinois convictions had prevented "this case [from being] resolved in a way that would have made more sense months ago."

¶79 The court explained that the State contributed to the delay of this case. According to the court, the State "had plenty of time" to prove the number of Chamblis's prior convictions and "did not take this [matter] seriously enough." The court further noted that the State was two weeks late in filing its response to Chamblis's motion challenging the Illinois convictions.

¶80 The court refused to consider the State's proffered evidence in part because doing so would further delay resolution of this case. The court explained that "I don't think I can do a plea without [the number of prior convictions] being determined. It is not a trial with a sentencing at a later date. This is a plea. It's a different type of procedure." The court stated that it "want[ed] the determination of . . . how many prior convictions [there] are before we actually enter into the plea, so Mr. Chamblis knows what he's pleading guilty to." The court expressed concern with further delaying the case for a later plea hearing, stating that "[d]iscovery requires discovery to be done in a timely fashion,

8

[and] to have this done last second like this . . . continues to prolong the process . . . ." The court also stated that, because Chamblis "sat in jail, days, months, waiting for [the State to determine his number of prior convictions]," it would not be "fair to him" to further delay the case by admitting the State's proffered evidence. The court concluded that it "can't justify extending things more" and that "discovery at some point has to end. . . . The discovery is done."

¶81 The court stated that "[i]f we need to put [this case] back on the trial calendar, we can." The court gave the parties 15 to 20 minutes to decide whether to proceed with a guilty plea to operating with a PAC (fifth or sixth offense). The parties then informed the court that they reached a new plea agreement. Pursuant to that agreement, Chamblis pled guilty to operating with a PAC as a sixth offense. As a result, Chamblis faced a mandatory minimum penalty of six months' imprisonment and a maximum penalty of six years' imprisonment.

## II. THE CIRCUIT COURT DID NOT ERRONEOUSLY EXERCISE ITS DISCRETION

¶82 "'This court will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion.'" Jackson, 352 Wis. 2d 249, ¶43 (quoting Weborg, 341 Wis. 2d 668, ¶41). "'A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record.'" Id. (quoting Weborg, 341 Wis. 2d 668, ¶41). "'[T]he circuit court's decisions to admit

9

or exclude evidence are entitled to great deference . . . .'" Id., ¶45 (quoting Head, 255 Wis. 2d 194, ¶43).

¶83 In the present case, the circuit court's concerns with fairness to the defendant and controlling the calendar by not prolonging the case any further were reasonable.[5] Chamblis had initially requested a speedy trial. A jury trial was first scheduled for March 2, which was approximately three months after Chamblis was bound over for trial. The trial date was delayed three months to June 15 and then delayed another three months to September 26. Similarly, a final pre-trial hearing had been scheduled for February, was moved to May, and was then moved to September. The plea hearing was held approximately ten months after the State filed its complaint against Chamblis, and he remained in custody that entire time awaiting trial. The State learned more than six months before the plea hearing that Chamblis believed that its evidence failed to prove that he had Illinois convictions for drunk driving. Nevertheless, the State did not obtain additional evidence of Illinois convictions until September 14, which was five days before the plea hearing. Further, the State was not prepared to present that additional evidence at the plea hearing, but instead wished to offer it at the sentencing hearing at a later date.[6]

¶84 As noted earlier, Chamblis had initially requested a speedy trial. At the time of that request there was no

---

[5] The majority opinion implicitly recognizes that the circuit court did not make a mistake of law. See supra note 1.

[6] The sentencing hearing was held on November 5, 2012.

indication that the State wished to amend the charges. Had the case been tried, it appears that the charges would have remained the charges to which he ultimately pled. This is not to say that the State's hands were tied, but under the facts of this case the circuit court was not incorrect to conclude that the State was barred from essentially amending the charges and penalties post-plea.

¶85 Under these facts, the circuit court did not erroneously exercise its discretion. A circuit court may exclude relevant evidence "if its probative value is substantially outweighed . . . by considerations of undue delay . . . ." Wis. Stat. § 904.03.[7] See also Wis. Stat. § 802.10(3)(d), (5)(d) (stating that a circuit court may control its calendar and speedily dispose of actions by setting a time limit for discovery and ruling on the admissibility of evidence pre-trial). Further, "[c]ircuit courts possess inherent discretionary authority to control their dockets with economy of time and effort." State ex rel. Collins v. Am. Family Mut. Ins. Co., 153 Wis. 2d 477, 483, 451 N.W.2d 429 (1990) (citing Rupert v. Home Mut. Ins. Co., 138 Wis. 2d 1, 7, 405 N.W.2d 661 (Ct. App. 1987)). See also Hefty v. Strickhouser, 2008 WI 96, ¶31, 312 Wis. 2d 530, 752 N.W.2d 820 ("Wisconsin circuit courts have discretion to control their dockets. This power is inherent to their function."); Schopper v. Gehring, 210 Wis. 2d 208, 215, 565 N.W.2d 187 (Ct. App. 1997) (citation omitted) ("The trial

---

[7] The circuit court's explicit concerns with undue delay "tacitly invoked" Wis. Stat. § 904.03. See State v. Smith, 2002 WI App 118, ¶16, 254 Wis. 2d 654, 648 N.W.2d 15.

11

court has the inherent power to control its calendar and scheduling."). A circuit court's power to control its calendar "is essential to the [circuit] courts' ability to function because it provides the courts with the authority to control their judicial business." Lentz v. Young, 195 Wis. 2d 457, 465-66, 536 N.W.2d 451 (Ct. App. 1995) (citing Neylan v. Vorwald, 124 Wis. 2d 85, 94, 368 N.W.2d 648 (1985)).

¶86 Accordingly, the "courts cannot allow litigants to control judicial calendars." Sherman v. Heiser, 85 Wis. 2d 246, 254, 270 N.W.2d 397 (1978). See also State v. Anthony, 2015 WI 20, ¶76, 361 Wis. 2d 116, 860 N.W.2d 10 ("'The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony.'" (quoting Taylor v. Illinois, 484 U.S. 400, 410-411 (1988))). If we were to conclude that under these facts the circuit court erroneously denied the State's request to introduce evidence at a later date, we would impermissibly allow the parties to control the circuit court's calendar and at the same time endorse the idea that a defendant need not know the charges to which he pleads or their penalties.

¶87 Chamblis pled guilty to a charge that had different penalties than the charge in the amended information that included the unproven prior offenses. Knowing the potential penalties is fundamental to entering a knowing, intelligent, and voluntary plea. See State v. Byrge, 2000 WI 101, ¶57, 237 Wis. 2d 197, 614 N.W.2d 477 (citation omitted) ("When a defendant is not aware of the potential punishment, the plea is

12

not entered knowingly, voluntarily, and intelligently . . . ."). This case is not one where the circuit court denied the State's attempt to amend charges to conform to the evidence or to timely amend charges so that a defendant can be on notice. Rather, this case is one where the State wished to essentially amend the charges, after a guilty plea, and have the defendant be exposed to greater penalties and mandatory minimums than those that were associated with the charge to which he pled guilty. The court did not erroneously exercise its discretion by denying the State's request. The defendant did not plead to the charges that relied upon the Illinois prior offenses and thus, carried higher mandatory minimums and greater exposure. Chamblis pled guilty to the original charge because the court determined that the State had not proven the Illinois prior convictions. The court accepted Chamblis's plea for one offense with one set of penalties. It would invoke fundamental principles of fairness to allow that plea to morph into an amended conviction for an offense to which he did not plead.

¶88 In sum, although I join the majority opinion, I would explicitly conclude that the circuit court did not erroneously exercise its discretion when it excluded the evidence that the State attempted to submit "too late."

¶89 For the foregoing reasons, I respectfully concur.

13